UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff<br><br>v.<br><br>Edward Jameson Purry, II,<br><br>　　　　Defendant | Case No.: 2:14-cr-00332-JAD-VCF<br><br>**Order Denying Emergency Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(i)**<br><br>[ECF Nos. 170, 173] |

　　　Defendant Edward Jameson Purry, II moves for a compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) because his health conditions put him at greater risk of complications from the COVID-19 virus, which has consumed the federal correctional institution in Lompoc, California, where he is serving his 102-month sentence for illegal acquisition of firearms.[1]  Though I am deeply sympathetic to Purry's situation, I deny his motion without prejudice because he has not exhausted the statutorily mandated process for seeking this relief.

## Background

　　　Purry is roughly 63 months into serving a 102-month sentence after a jury found him guilty on four counts of making false statements in the acquisition of fourteen firearms.[2]  As I explained at sentencing, although the offenses of conviction were "based on false addresses," there was also "a significant amount of very compelling related conduct":[3]

> This was not a single mistake.  It wasn't even 14 mistakes that the jury convicted him of, but it turns out it was 90 or more mistakes, many of which have been recovered, some from crime scenes, and many still out there on the streets at this point.  And even though I did not find that—I did not apply the trafficking enhancement

---

[1] ECF No. 170.

[2] ECF No. 32 (indictment).

[3] ECF No. 157 at 53 (transcript of sentencing hearing).

> because I didn't want to double count, I do recognize that Mr. Purry has demonstrated a few things. He has demonstrated a complete lack of respect for the gun laws and the consequences of his actions. And it's clear to me he was trafficking guns, 90 guns over the course of an entire year. So this—as much as I understand the characterization of this as a mistake, it was a lot of mistakes and it was a series of mistake[s] and very serious ones.[4]

The Ninth Circuit affirmed his judgment of conviction.[5]

Now 34 years old, Purry is incarcerated at the Bureau of Prison's (BOP's) FCI Lompoc facility and has a projected release date of May 12, 2022.[6] His medical records indicate that he has asthma, hypertension, and hyperlipidemia, and that he has been prescribed medication for asthma and hypertension.[7] He notes that these conditions put him at risk of being more seriously impacted by COVID-19 should he contract it. He stresses that FCI Lompoc has suffered a serious outbreak of the virus and, indeed, the BOP website currently reflects that 885 of the inmates at that facility have tested positive for the virus.[8] Purry acknowledges that he has not exhausted the administrative process under 18 U.S.C. § 3582(c)(1)(A) before petitioning this court for compassionate release,[9] and he argues in his counseled motion that, because "these are not ordinary times . . . the Court should waive these administrative exhaustion requirements."[10] The government opposes Purry's motion, arguing that his failure to comply with the statutory

---

[4] *Id.*

[5] ECF No. 165 (memorandum disposition).

[6] ECF No. 170 at 2.

[7] ECF No. 171.

[8] https://www.bop.gov/coronavirus/ (last visited 5/14/2020).

[9] ECF No. 170 at 5.

[10] *Id.*

2

exhaustion requirements is fatal to his request and, regardless, he has not shown extraordinary and compelling reasons for compassionate release.[11]

**Discussion**

A sentencing court's ability to modify or reduce a sentence once imposed is seriously limited.[12] The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018,[13] is an exception to this limitation. It allows the sentencing judge to reduce a sentence based on "extraordinary and compelling reasons" after the defendant has failed to get the BOP to bring such a motion on his behalf.[14] The court may entertain an inmate's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) only (1) "after [he] has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on his behalf or (2) after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."[15]

Purry argues that the court should dispense with this administrative-exhaustion requirement due to the urgency of the COVID-19 situation at Lompoc.[16] In addressing the flood of emergency release motions that the pandemic has prompted, courts are split on the question of whether the exhaustion requirement can be disregarded.[17] After evaluating the growing body of

---

[11] ECF No. 172. Purry filed a reply at ECF No. 175.

[12] *See United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (exploring Federal Rules of Criminal Procedure 35 and 36); 18 U.S.C. § 3582(c).

[13] The First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

[14] 18 U.S.C. § 3582(c)(1)(A)(i).

[15] *Id.*

[16] ECF No. 267 at 5.

[17] *See, e.g., U.S. v. Otero*, 2020 WL 1912216, *4 (S.D. Cal. Apr. 20, 2020) (collecting cases).

decisions, I side with the courts that have concluded that the failure to satisfy this requirement is "a glaring roadblock foreclosing compassionate release . . . ."[18]

### A. The compassionate-release exhaustion requirement is a Congress-created one that the court cannot ignore.

Section 3582(c) states that "[t]he court *may not* modify a term of imprisonment once it has been imposed," except under specified conditions.[19] For a motion brought under § 3582(c)(1)(A)(i), those specified conditions include the exhaustion of administrative remedies or the BOP's inaction for 30 days.[20] Thus, the exhaustion requirement is imposed by the express language of the statute itself; it is not judicially created. As the United States Supreme Court explained in *Ross v. Blake*, while "judge-made exhaustion doctrines . . . remain amenable to judge-made exceptions[,] . . . a statutory exhaustion provision stands on different footing. There Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to."[21] Courts may not carve out exceptions that Congress did not provide, even "special circumstances" ones, because "mandatory exhaustion statutes . . . establish mandatory exhaustion regimes, foreclosing judicial discretion."[22]

---

[18] *U.S. v. Raia*, 954 F.3d 594 (3d Cir., Apr. 2, 2020) (holding that failure to comply with § 3582(c)(1)(A)'s exhaustion requirement barred relief).

[19] 18 U.S.C. § 3582(c) (emphasis added).

[20] 18 U.S.C. § 3582(c)(1)(A).

[21] *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *see also Shaw v. Bank of Am. Corp.*, 946 F.3d 533, 541 (9th Cir. 2019) ("[I]f exhaustion 'is a statutorily specified prerequisite'—as opposed to a judicially created one—'[t]he requirement is . . . something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility'" (quoting *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975))).

[22] *Id*. at 1856–58.

4

Because Congress prescribed no special-circumstances exception to § 3582(c)(1)(A)(i)'s exhaustion requirement, *Ross* dictates that this court lacks the power to create one.[23] Any argument for creating such an exception is further weakened by the fact that this statutory provision is itself a special-circumstances exception to the court's inability to modify a sentence. Plus, it has its own futility exception "baked into its text,"[24] as it permits an inmate to file his motion after 30 days if the warden hasn't acted.[25] Given Congress's decision to mandate exhaustion and specify this singular, express exception, this court cannot apply an unwritten special-circumstances one to excuse Purry's failure to exhaust.[26] Because Purry did not exhaust the administrative process before filing this motion, it must be denied for failure to exhaust.

---

[23] *See, e.g.*, *Harris v. Harris*, 935 F.3d 670, 676 (9th Cir. 2019) (noting that statutory language must be construed "strictly and narrowly").

[24] *Ross*, 136 S. Ct. at 1862.

[25] 18 U.S.C. 3582(c)(1)(A).

[26] *See Ross*, 136 S. Ct. at 1856, 1862 (concluding that the Prison Litigation Reform Act's "mandatory language means a court may not excuse a failure to exhaust, even to take [special] circumstances into account"). There are also sound policy reasons to require an inmate to present his COVID-19 compassionate-release request first to the BOP. The Attorney General has empowered the BOP to transfer suitable candidates with COVID-19 risk factors to home confinement. https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf. (last visited 5/12/2020). The exhaustion doctrine recognizes "that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer" and allows the agencies to apply their "special expertise." *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992), *superseded by statute on other grounds.* "Because defendant is in BOP custody, the BOP is in a better position to initially determine [his] medical needs, the specific risk of COVID-19 to [him] and the inmates generally at" his facility, "the risk to the public if [he] is released[,] and whether [his] release plan is adequate." *U.S. v. Read-Forbes*, 2020 WL 1888856, *4 (D. Kan., Apr. 16, 2020).

### B. Even as a claim-processing rule, § 3582(c)(1)(A)(i)'s exhaustion requirement is not amenable to equitable exceptions.

Sidestepping the *Ross* rule, Purry argues that this court can excuse his failure to exhaust because § 3582(c)(1)(A)(i)'s requirement is not an unbending jurisdictional bar, but merely a claim-processing rule subject to equitable exceptions, like futility.[27] But labeling the provision a claim-processing rule gets Purry no closer to his requested relief.

As a claim-processing rule, this one is mandatory. Its plain text precludes a court from modifying a sentence except in one of the ways outlined, admonishing that "[t]he court may not modify a term of imprisonment once it has been imposed except" under the provision's express exceptions.[28] The legislative history of the First Step Act further supports the conclusion that this exhaustion requirement is mandatory. Before its enactment, prisoners could not directly petition the court for compassionate release; the request had to be made by the BOP on the prisoner's behalf.[29] But because the BOP rarely exercised that authority,[30] the Act "removed [the] BOP as the compassionate[-]release gatekeeper by permitting prisoners to directly petition the court for release" if the BOP refuses the inmate's request or fails to act on it within 30 days.[31]

---

[27] ECF No. 175 at 7.

[28] 18 U.S.C. § 3582(c)(1)(A)(i); *see also Ross*, 136 S. Ct. at 1856 (suggesting that "may not" is mandatory language).

[29] 18 U.S.C. § 3582 (effective Nov. 2, 2002, to Dec. 20, 2018) (stating that "The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction").

[30] *United States v. Brown*, 411 F. Supp. 3d 446, 450 (S.D. Iowa 2019), *order amended on reconsideration*, 2020 WL 2091802 (S.D. Iowa Apr. 29, 2020).

[31] *U.S. v. Britton*, 2020 WL 2404969, *6 (D. N. H. May 12, 2020).

And though one of the First Step Act's goals was to expedite the compassionate-release process, Congress chose 30 days as the futility period, striking the balance between the BOP's interest in assessing whether an inmate in its custody "is a good candidate for release and the prisoner's interest in a prompt and meaningful review of his request for compassionate release."[32] The mandatory nature of this claim-processing rule "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account."[33]

  Purry argues that deeming § 3582(c)(1)(A)(i)'s exhaustion requirement a claim-processing rule instead of a jurisdictional bar opens it up to equitable exceptions like waiver and futility. He contends that this provision is "similar to the scheme for employment claims in Title VII," which the Supreme Court in *Fort Bend County v. Davis* found to be subject to forfeiture or waiver if not timely raised.[34] But the *Fort Bend County* court recognized that even a non-jurisdictional, mandatory claim-processing rule must be enforced "if a party 'properly raises' it,"[35] and here, the government has.[36]

  Purry's reliance on the Second Circuit's statement in *Washington v. Barr* that "[e]ven where exhaustion is seemingly mandated by statute . . . the requirement is not absolute" is also misplaced.[37] The *Barr* panel was not evaluating a statutorily created exhaustion provision, but rather a judge-created one,[38] making it subject to judge-created exceptions and materially

---

[32] *Id.*

[33] *See Ross*, 136 S. Ct. at 1856.

[34] ECF No. 175 at 7 n.11 (citing *Fort Bend Cnty v. Davis*, 139 S. Ct. 1843, 1846–48 (2019)).

[35] *Davis*, 139 S. Ct. at 1849 (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005)).

[36] ECF No. 172. *See also Manrique v. U.S.*, 137 S. Ct. 1266, 1272 (2017) (quoting *Eberhart*, 546 U.S. at 15 ("If a party 'properly raise[s] them,' however, they are 'unalterable.'")).

[37] ECF No. 175 (quoting *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019)).

[38] *Barr*, 925 F.3d at 118 (reasoning that "requiring exhaustion is appropriate in the instant case. Although not mandated by Congress, it is consistent with congressional intent, as manifested in

7

distinguishing it from the instant provision.[39] Nor can I find support in the Ninth Circuit's comment in *Hendricks v. Zenon* that a court can "dispense with" an exhaustion requirement "in rare cases where exceptional circumstances of peculiar urgency are shown to exist."[40] The *Hendricks* panel was evaluating the application of the exhaustion doctrine in habeas corpus actions[41] under 28 U.S.C. § 2254, which expressly authorizes federal courts to excuse a failure to exhaust and address a writ on its merits if "circumstances exist that render [the exhaustion] process ineffective to protect the rights of the applicant."[42] Because § 3582(c)(1)(A) is devoid of any similar statutory exception, *Hendricks* is inapposite.

I acknowledge that a growing number of district courts are dispensing with the exhaustion requirement, primarily on futility or special-circumstances grounds,[43] but I disagree with their reasoning, if any. The only equitable exceptions to mandatory claim-processing rules that the High Court has recognized are forfeiture and waiver when "the party asserting the rule waits too long to raise the point."[44] It has "reserved whether mandatory claim-processing rules may ever be subject to equitable exceptions"[45] like futility. Because I find that § 3582(c)(1)(A)'s

---

the CSA's text and structure. And it advances the goals that the Supreme Court has announced the doctrine serves.").

[39] *Ross*, 136 S. Ct. at 1857.

[40] *See* ECF No. 170 at 6 (quoting *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993)).

[41] *See id.* (quoting *Granberry v. Greer*, 481 U.S. 129, 134 (1987), and *Ex parte Hawk*, 321 U.S. 114, 117 (1944)).

[42] 28 U.S.C. § 2254(b)(1)(B)(ii).

[43] *See* ECF No. 170 at 6–7 (collecting cases).

[44] *Manrique v. U.S.*, 137 S. Ct. 1266, 1272 (2017) (quoting *Eberhart*, 546 U.S. at 15 (2005)).

[45] *Fort Bend County*, 139 S. Ct. at 1849 n.5 (quoting *Hamer v. Neighborhood Housing Servs. of Chicago*, 138 S. Ct. 13, 18 n. 3 (2017)).

exhaustion requirement is mandatory, Purry's failure to comply with it leaves me powerless under *Ross* to consider his direct motion.

**Conclusion**

IT IS THEREFORE ORDERED that Defendant's Emergency Motion for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582(c)(1)(A)(i) and Authorizing Any Remaining Portion of His Sentence to be Served on Home Confinement **[ECF No. 170] is DENIED without prejudice** to its refiling after exhaustion of the administrative process.

IT IS FURTHER ORDERED that the Government's Motion to Seal defendant's medical records **[ECF No. 173] is GRANTED.** The Clerk of Court is directed to maintain the seal on ECF No. 174.

Dated: May 14, 2020

_____
U.S. District Judge Jennifer A. Dorsey