UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff<br><br>v.<br><br>Edward Jameson Purry, II,<br><br>    Defendant | Case No.: 2:14-cr-00332-JAD-VCF<br><br>**Order Denying Request for Release**<br><br>[ECF Nos. 178, 186] |

    This court denied defendant Edward Jameson Purry, II's motion for a compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) because had not shown that he exhausted the statutorily mandated process for seeking such relief.[1] Purry has since demonstrated that he did exhaust that process and now moves for reconsideration.[2] Because I did not evaluate the merits of Purry's request when denying it for lack of exhaustion, I grant his request to do so, but I ultimately conclude that compassionate release is not warranted.

**Background**

    Purry is roughly 63 months into serving a 102-month sentence after a jury found him guilty on four counts of making false statements in the acquisition of fourteen firearms.[3] The evidence at trial and information in the presentence report (PSR) made it clear that these misrepresentations were just part of a larger operation to traffic guns. The Ninth Circuit affirmed his judgment of conviction.[4]

---

[1] ECF No. 177.

[2] ECF No. 178. Purry so demonstrated in a supplement that crossed processing paths with the court's order. *See* ECF No. 176.

[3] ECF No. 32 (indictment).

[4] ECF No. 165 (memorandum disposition).

Now 34 years old, Purry is incarcerated at the Bureau of Prison's (BOP's) FCI Lompoc facility and is two years from his projected release date.[5] His medical records indicate that he has asthma, hypertension, and hyperlipidemia, and that he has been prescribed medication for asthma and hypertension.[6] He notes that these conditions put him at risk of being more seriously impacted by COVID-19 should he contract it. He stresses that FCI Lompoc has suffered a serious outbreak of the virus. It is widely known that this facility was severely impacted by the virus. Indeed, the BOP website currently reflects that 19 of the inmates at that facility and 8 staff members are testing positive for the virus and that 884 inmates have recovered from it.[7]

Purry argues that he should be granted compassionate release or otherwise transferred to home confinement with his family because his preexisting medical conditions make him more vulnerable to the virus. In numerous supplemental filings, he has informed the court that he has now contracted the virus,[8] that he has received no treatment for it, and that a friend of his at Lompoc has now died from it.[9] The government continues to oppose Purry's request in its responses to his filings. It argues that the BOP can—and continues to—adequately care for Purry at Lompoc[10] and that his release would endanger the community.[11]

---

[5] ECF No. 170 at 2.
[6] ECF No. 171.
[7] https://www.bop.gov/coronavirus/ (last visited 5/28/2020).
[8] ECF No. 181.
[9] ECF No. 184.
[10] ECF No. 172 at 12–16; ECF No. 180 at 3; ECF No. 182.
[11] ECF No. 172 at 3–4, 20–21; ECF No. 180 at 3.

**Discussion**

A sentencing court's ability to modify or reduce a sentence once imposed is seriously limited.[12] The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018,[13] is an exception to this limitation. It allows the sentencing judge to reduce a sentence based on "extraordinary and compelling reasons" after the defendant has failed to get the BOP to bring such a motion on his behalf.[14] The court must consider the factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable."[15] Any sentence reduction also must be "consistent with applicable policy statements issued by the Sentencing Commission,"[16] including the requirement that the defendant "is not a danger to the safety of any other person or to the community."[17]

The premise of Purry's request was that his release would help prevent him from contracting the virus. That need vanished when Purry tested positive for the virus.[18] And fortunately, the notion that keeping Purry incarcerated during this pandemic would "render his remaining imprisonment term a death sentence" due to his preexisting medical issues[19] has also proven false. Purry's medical records reflect that he has been entirely asymptomatic since contracting COVID-19.[20] And while I recognize that the measures that FCI Lompoc initially

---

[12] *See United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (exploring Federal Rules of Criminal Procedure 35 and 36); 18 U.S.C. § 3582(c).

[13] The First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018).

[14] 18 U.S.C. § 3582(c)(1)(A)(i).

[15] *Id*.

[16] *Id*.

[17] U.S.S.G. § 1B1.13(2).

[18] *See* records at ECF No. 187 at 32.

[19] ECF No. 170 at 10.

[20] ECF No. 187 at 19–20.

3

implemented to control the spread of COVID-19 largely failed as the vast majority of inmates have tested positive for the virus, based on the evidence currently before me, it appears that FCI Lompoc is adequately monitoring and caring for Purry. The facility has established and implemented an extensive protocol in response to the outbreak, including the installation of a hospital care unit at the facility and universal testing.[21] Plus, Purry's medical records reflect that, contrary to Purry's reports to his counsel, Purry was monitored by Lompoc medical staff, had his temperature and condition checked daily between May 9th and May 20th, and consistently denied any COVID-19 symptoms including cough, muscle pain, fatigue, sore throat, loss of taste or smell, or chills.[22] In light of these developments, I cannot find Purry's situation to be an "extraordinary or compelling circumstance" that warrants his release.

Even if I could so find, I would deny Purry's motion based on the § 3553(a) factors. Purry had little criminal history—just one misdemeanor conviction for trying to buy a car using a counterfeit driver's license[23]—but it occurred during the same time period as the offense conduct here, which was serious. As I explained at sentencing, although the offenses of conviction were "based on false addresses," there was also "a significant amount of very compelling related conduct":[24]

> This was not a single mistake. It wasn't even 14 mistakes that the jury convicted him of, but it turns out it was 90 or more mistakes, many of which have been recovered, some from crime scenes, and many still out there on the streets at this point. And even though I did not find that—I did not apply the trafficking enhancement because I didn't want to double count, I do recognize that Mr. Purry has demonstrated a few things. **He has demonstrated a**

---

[21] ECF Nos. 182-1 (Declaration of Suzanne Scott), 182-2 (BOP media statement re: testing), 182-3 (media statement re: hospital care unit).

[22] *Id.*

[23] PSR at 19, ¶ 144.

[24] ECF No. 157 at 53 (transcript of sentencing hearing).

> **complete lack of respect for the gun laws and the consequences of his actions. And it's clear to me he was trafficking guns, 90 guns over the course of an entire year.** So this—as much as I understand the characterization of this as a mistake, it was a lot of mistakes and it was a series of mistake[s] and very serious ones.[25]

Indeed, I found clear and convincing evidence that Purry knew that his sale of firearms to an acquaintance at a car wash whom he knew only as "Pablo" meant that they'd end up trafficked in Mexico.[26] And though Purry was originally granted pretrial release, that release was revoked because of his consistent lack of candor to Pretrial Services officers.[27]

It appears from Purry's supplemental submissions that he has been a model inmate during his incarceration and availed himself of numerous programs, which this court recognizes is praiseworthy and certainly provides some mitigation for his criminal history and non-compliance with conditions of supervision.[28] However, these developments don't tip the § 3553(a) factor scale in a way that justifies shaving years off Purry's 102-month sentence. His conduct was reckless and threatened public safety, making him a danger to the community.[29] The low-end guidelines sentence he received was and remains sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes by this defendant.[30] And a release at this time would be roughly akin to a four-level downward

---

[25] *Id.* (emphasis added).

[26] ECF No. 157 at 21–22 (transcript of sentencing).

[27] ECF No. 151 at 14–15 (transcript of revocation proceedings).

[28] *See, e.g.,* ECF Nos. 176-1, 176-2.

[29] *See* U.S.S.G. § 1B1.13(2) (policy statement that § 3582 release requires that "the defendant is not a danger to the safety of any other person or to the community").

[30] 18 U.S.C. § 3553(a)(2). At sentencing, the government asked for an upward departure to 151 months. *See* ECF No. 157 at 25.

variance, which would create an unwarranted sentence disparity among defendants guilty of similar conduct.[31] So I find that Purry is not entitled to a sentence reduction or release to home confinement.

**Conclusion**

IT IS THEREFORE ORDERED that Defendant's Motion for Reconsideration of Order Denying Supplement to Emergency Motion for Order Reducing Sentence or Modifying Judgment under 18 U.S.C. § 3582(c)(1)(A)(i) and Authorizing Any Remaining Portion of His Sentence to be Served on Home Confinement **[ECF No. 178] is GRANTED in part and DENIED in part**. It is granted in that I have reconsidered my order in light of the supplementation and consider the release request on its merits; when I do evaluate the merits of the motion and the many supplements to it, I continue to deny the request for relief.

IT IS FURTHER ORDERED that the Government's Motion to Seal defendant's medical records **[ECF No. 186] is GRANTED.** The Clerk of Court is directed to maintain the seal on ECF No. 187.

Dated: May 28, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

[31] 18 U.S.C. § 3553(a)(6).