UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| United States of America, | Case No.: 2:14-cr-00332-JAD-VCF-1 |
|---|---|
| Plaintiff | |
| v. | **Order Denying Renewed Motion for Compassionate Release** |
| Edward Jameson Purry II, | [ECF No. 194] |
| Defendant | |

Edward Jameson Purry II is serving a 102-month sentence at Federal Correctional Institution Lompoc (FCI Lompoc) for illegal acquisition of firearms. This summer, I twice denied Purry's request for compassionate release[1]—first, because he had not exhausted the statutorily mandated process for seeking relief under 18 U.S.C. § 3582I(1)(A)(i) and later because he did not have an extraordinary and compelling reason for early release as an individual who already tested positive for COVID-19 and weathered it asymptomatically.

With an appeal now pending on those denials,[2] Purry moves a third time for an order reducing his sentence, arguing that since I last denied his request, his health conditions have changed.[3] Namely, he argues that he was diagnosed with Type-2 diabetes, experiences lasting-effects from COVID-19, and was recently diagnosed with anxiety, which he claims increases his risk of contracting the virus as an immunocompromised person. The government contends that no scientific evidence shows that a person can contract COVID-19 a second time so his new

---

[1] ECF Nos. 177 (order denying first motion), 188 (order denying motion for reconsideration).

[2] ECF No. 190 (notice of appeal).

[3] ECF No. 194 (renewed motion). I deny Purry's request for a hearing on this motion because I find that this motion is suitable for disposition without argument.

diagnosis does not outweigh the sentencing factors I considered under 18 U.S.C. § 3553(a).[4] While I am sympathetic to the hardships that Purry has recently faced, I deny his motion because this new information does not sufficiently tip the scales in favor of release.

## Background

Thirty-four-year-old Purry has served roughly 67 months of his 102-month sentence after a jury found him guilty of making false statements while acquiring fourteen firearms.[5] He is incarcerated at the Bureau of Prison's FCI Lompoc facility and is more than a year and a half away from his projected release date.[6] Despite his relative youth, Purry suffers from asthma, hypertension, hyperlipidemia, Type-2 diabetes, chronic kidney disease, and anxiety,[7] which he argues place him at higher risk of being seriously affected or killed by COVID-19. In May, Purry tested positive for COVID-19[8] and denied experiencing symptoms for most of the month.[9]

Twice this summer, Purry sought compassionate release based on his underlying conditions.[10] I denied his first request because he failed to exhaust the administrative remedies required by 18 U.S.C. § 3582(c)(1)(A)(i).[11] After he satisfied § 3582's exhaustion requirement, I reconsidered his request but denied it on its merits because he was entirely asymptomatic and adequately monitored by Lompoc medical staff, so he did not present extraordinary or

---

[4] ECF No. 196 (response).

[5] ECF No. 32 (indictment).

[6] *See* ECF No. 157 at 54 (sentencing Purry to 102 months in custody in November 2015) (transcript of sentencing); *see* https://www.bop.gov/inmateloc/ (last visited Oct. 5, 2020).

[7] ECF No. 199 at 7–8 (sealed Ex. A to supplement).

[8] ECF No. 195 at 266 (sealed Ex. A to motion).

[9] ECF No. 187 at 19–20 (sealed Ex. 1 to response to first motion for compassionate release).

[10] ECF Nos. 170, 188.

[11] ECF No. 177.

compelling circumstances to justify his release.[12]  In the order, I also explained that even if his situation met this standard, the 18 U.S.C. § 3553(a) factors weighed in favor of maintaining his original sentence.[13]  Purry has appealed those orders.[14]

Since then, he has complained to FCI Lompoc medical staff of a litany of symptoms, which he attributes to a "prolonged COVID-19 recovery."[15]  FCI Lompoc staff determined that Purry's labs showed he has a chronic kidney disease and Type-2 diabetes.[16]  They also diagnosed him with moderate anxiety.[17]  As of late August, his medical records reflect he is still noncompliant with Lompoc's recommended treatment and regimen.[18]  He now moves, for a third time, for an order reducing his sentence or permitting him to serve the rest of his sentence on home confinement, arguing that his new diagnoses and the impacts from COVID-19 put him at a higher risk of death if he is able to contract it again.[19]

## Discussion

The compassionate-release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, permits a sentencing judge to reduce a sentence based on "extraordinary

---

[12] ECF No 188 at 4.

[13] *Id.* at 4–6.

[14] ECF No. 190.

[15] ECF No. 194 at 2.

[16] *See* ECF No. 199 at 11 (sealed Ex. A to supplement).  To support his briefing on this issue, Purry filed his medical records under seal but did not comply with Local Rule IA 10-5, which requires that a party must move for leave to file those documents under seal.  *See* ECF Nos. 171, 195, 199.  But because Purry's medical privacy is a compelling reason to seal the records that he relies on in his motion, I do not unseal them.  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).  Counsel is advised to consult the local rules and file the appropriate motion before filing any additional documents under seal.  L.R. IA 10-5.

[17] ECF No. 199 at 7.

[18] *Id.* at 8.

[19] ECF No. 194.

and compelling reasons" once the defendant has failed to get the BOP to bring such a motion on his behalf.[20]  The court must consider any applicable factors under 18 U.S.C. § 3533(a) and whether a sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission."[21]  This includes ensuring that the defendant "is not a danger to the safety of any other person or to the community."[22]

      Since my last order denying Purry's request, two things have changed: he was diagnosed with a chronic kidney disease, anxiety, and Type-2 diabetes; and he now experiences symptoms from his bout with COVID-19 earlier this year.[23]  When I denied his prior request, I found that the evidence suggested that, even with his conditions, he endured the virus asymptomatically.  I also found that he was being treated for the virus at the prison.  Since that time, Purry says he experienced several symptoms, which he maintains stem from his COVID-19 recovery. [24]  He adds that his newly discovered kidney problems, which existed before he had COVID-19, and his anxiety put him at an even higher risk than he was the last time I considered his request.[25]  And Purry claims that the medical staff's latent discovery of his kidney condition shows they are not adequately caring for him.[26]  But he has failed to show that the prison gave him inadequate care when he had the virus and has failed to show that his post-virus care is insufficient in a way

---

[20] 18 U.S.C. § 3582(c)(1)(A)(i).
[21] *Id.*
[22] U.S.S.G. § 1B1.13(2).
[23] *See* ECF Nos. 195 at 271, 199 at 7–8.
[24] ECF No. 194 at 8 (citing Ex. A at 270).
[25] *See* ECF No. 199 at 2–3.
[26] ECF No. 194 at 8.

4

that would outweigh the significant risks I identified in my previous order. In fact, the evidence that Purry provides to support his request suggests that Purry has refused care.[27]

Purry's request then and Purry's request now hinge on his fear of contracting the virus.[28] Before I decided his last request, he contracted the virus and was asymptomatic for a long period, and now he argues that if he could contract the virus again, his new diagnoses indicate that he would be at a greater risk of death. Although he now has a diagnosis for his kidney problems, as he notes, he had the kidney problem that put him at a high risk before he contracted the virus the first time. He has not demonstrated that his newfound awareness of his ailment would make him more susceptible to the virus a second time. And even if his anxiety now reduces his ability to fight off the virus should he get it again, he still faces the hurdle he faced before his supplemental filing—at this point, it is wholly speculative whether he or any other person could get the virus again. This speculation, unconfirmed by science, is not a sufficient basis to swing the pendulum in the other direction.[29] Neither the parties nor I are scientists with the ability to

---

[27] ECF Nos. 195 at 4, 199 at 8 (noting he is noncompliant with medication).

[28] While Purry contends that he "does not need to be reinfected with COVID-19 to become seriously ill or die from its complications," he has failed to show an extraordinary or compelling case that FCI Lompoc is refusing to care for these complications. *See* ECF No. 197 at 5. Purry's medical records suggest that he received treatment after complaining of the lasting complications from COVID-19, including a quarantine period, where he was generally asymptomatic for COVID-19 and refusing medications. *See, e.g.*, ECF No. 195 at 6, 14, 178, 184 (sealed Ex. A to motion). His medical records also reflect that his shortness of breath was closely monitored. *Id.* at 15.

[29] Purry cites a variety of articles that indicate that some patients have not developed antibodies to the virus. ECF No. 194 at 11. He also cites a litany of news articles that report some cases of reinfection. *Id.* at 11 n.27. But as the CDC's recent guidance notes, "[t]here are no confirmed reports to date of a person being reinfected with COVID-19 within 3 months of initial infection" and that "a person who has had and recovered from COVID-19 may have low levels of virus in their bodies for up to 3 months after diagnosis." *Duration of Isolation and Precautions for Adults with COVID-19*, CDC (Sept. 10, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html.

accurately predict the future of this virus. So while I am sympathetic to Purry's concerns and the added challenges of facing this virus in an institutional setting, a possibility that is unconfirmed by science is insufficient to create an extraordinary and compelling circumstance justifying his release.

Even if I were to find that his new conditions now present extraordinary and compelling circumstances to warrant his release, the § 3553(a) factors still weigh heavily against his early release. The circumstances that first led me to find that Purry is a danger to the community have not changed. Purry agrees that the only changes to the factors weighing in his favor are his new conditions and COVID-19's lasting impact on his life.[30] So, I must now weigh those same factors with his new diagnoses and the possibility that he could contract the virus again.

During his sentencing, I determined that although Purry had a limited criminal history, the offense for which I sentenced him was serious. I noted that there was "a significant amount of very compelling related conduct" that indicated to me that his conduct was more than a mere mistake. Rather, "it was 90 or more mistakes, many of which have been recovered, some from crime scenes, and many still out there on the streets at this point . . . ." And while I understood Purry's "characterization of [his crime] as a mistake," clear and convincing evidence suggested that this was a series of serious mistakes, which included Purry selling firearms to a near-stranger, knowing that the firearms would end up trafficked in Mexico. Also during his time on pretrial release, Purry showed a lack of candor to Pretrial Services, which resulted in a revocation of that release.[31]

---

[30] ECF 194 at 13.

[31] ECF No. 151 at 14–15 (transcript of revocation proceedings).

I am also cognizant of the factors that weigh in Purry's favor.  He cared for his family; has generally been an outstanding inmate, participating in many programs at the prison and committing no infractions during his time there; he has a plan to stay at his parent's home; and now he has health conditions that will require lasting treatment.  Purry adds that he can no longer pose a danger to the community because of his new diagnoses.[32]  But he has failed to articulate how treatment for his new illness now makes him less dangerous to the community.  As I noted previously, his conduct was reckless and jeopardized community safety.[33]  His new diagnoses do not now outweigh the factors that I previously recognized did not justify limiting his sentence—which was already within the low end of the sentencing guidelines.

As both parties agree, there is simply insufficient data to determine whether a person may become reinfected with COVID-19 and, according to the CDC, though data on reinfection is limited, "[r]einfection with SARS-CoV-2 has not yet been definitively confirmed in any recovered persons to date."[34]  So I am faced with the uncertainty of Purry becoming reinfected, with the risk he poses to the community, and an incongruent sentence for similar guilty conduct.  Given these risks, I cannot find that the § 3553(a) factors favor early release.  I thus find that Purry's original sentence was and remains sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and protect the public from further crimes by him.[35]  And I find that releasing Purry now would create an unwarranted sentence disparity among defendants

---

[32] ECF No. 197 at 7.

[33] ECF No. 188 at 5; *see* U.S.S.G. § 1B1.13(2) (policy statement that § 3582 release requires that "the defendant is not a danger to the safety of any other person or to the community").

[34] *Duration of Isolation*, *supra* note 29.

[35] 18 U.S.C. § 3553(a)(2).

7

guilty of similar conduct because given the time he has served, release at this point would be a downward variance by several levels.[36]

### Conclusion

IT IS THEREFORE ORDERED that Purry's renewed emergency motion for compassionate release **[ECF No. 194] is DENIED**. The Clerk of Court is directed to maintain the seal on ECF Nos. 171, 195, 199.

_____
U.S. District Judge Jennifer A. Dorsey
October 6, 2020

---

[36] *Id.* § 3553(a)(6).